USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-23-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TMT BULK CO., LTD.,

                      Plaintiff,          09 Civ. 1255 (PKC)

       -against-

                                       MEMORANDUM AND ORDER

CORUS UK LIMITED and CORUS
STAAL BV,

                    Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

       Plaintiff TMT Bulk Co., Ltd. brings this maritime action against defendants Corus UK Limited ("Corus UK") and Corus Staal BV (Netherlands) ("Corus Staal"). Plaintiff, a foreign company organized under foreign law and operating from offices in Taipei, Taiwan, alleges in its Verified Complaint that: by Contract of Affreightment dated October 12, 2007, plaintiff chartered its shipping vessel, the M/V MORMUGOA, to defendant Corus Staal for use in lifting 9 iron ore and coal cargoes between February 1, 2008 and March 31, 2010. (Verified Complaint ("Compl.") ¶¶ 2, 5.) Corus UK acted as agent on behalf of Corus Staal during the preparation and execution of the charter contract. (Compl. ¶ 3.) The parties' contract required Corus Staal to begin lifting its first cargo by February/March 2008 and to continue lifting one cargo per quarter thereafter. (Compl. ¶ 6.) Corus Staal breached the contract by canceling the first quarter lifting, and this breach damaged plaintiff in the amount of $5,776,804.69. (Compl. ¶¶ 7-8.)

Plaintiff alleges that it has commenced arbitration of the above dispute in London and that it seeks to attach $7,069,618.59 (damages on its principal claim plus interest, fees and costs) as security for its expected recovery in that arbitration. (Compl. ¶¶ 11, 17.) On plaintiff's application, this Court entered an Ex Parte Order for Process of Maritime Attachment on February 18, 2009 and scheduled an Initial Pretrial Conference in the case for May 22, 2009. On February 23, 2009, funds totaling $7,069,618.59 were attached at HSBC Bank, fully securing plaintiff for its claim. (Declaration of Claurisse Campanale-Orozco in Support of Plaintiff's Opposition to Defendants' Motion to Vacate the Attachment ("Orozco Decl."), ¶ 7.) On March 30, defendants moved by Order to Show Cause to vacate the attachment. Defendants argue that the attachment should be vacated because they are "found" in this district, for purposes of Supplemental Admiralty Rule B, through their New York-based general agent, Oremco, Inc. ("Oremco"). Pursuant to an Order of March 30, plaintiff filed answering papers in opposition to defendants' motion on April 3, 2009 and defendants submitted a Reply Memorandum of Law in further support of their motion on April 7.

The Court held a hearing on defendants' motion on April 8, 2009. Supplemental Admiralty Rule E(4)(f), Fed. R. Civ. P. The Court afforded the parties the opportunity to offer evidence beyond their written submissions. No witnesses were called.

For the reasons outlined below, defendants' motion to vacate the attachment, release attached funds and dismiss the Verified Complaint is denied.

I.      Legal Standards

The Second Circuit has summarized the requirements for maritime attachment and vacatur as follows:

> [I]n addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) <u>the defendant cannot be found within the district</u>; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. . . . [V]acatur is [also] appropriate in other limited circumstances. . . . [A] district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

<u>Acqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 445 (2d Cir. 2006) (emphasis added). The burden of proof on a motion to vacate lies with the party originally obtaining the attachment. <u>Id.</u> at 445 n.5.

Rule B does not expressly define the phrase "found within the district," but the Second Circuit has interpreted this element of the rule to require a two-pronged inquiry: first, whether a defendant can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process (the "<u>Seawind</u> Test"). See <u>STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd.</u>, 560 F.3d 127, 130 (2d Cir. 2009) (citing <u>Seawind</u>, 320 F.2d at 582).

      A.      Jurisdiction

No argument is advanced in this case that defendants are present for general jurisdictional purposes by reason of their own, directly conducted actions.

3

Defendants maintain no offices, telephones or employees within the district. (Plaintiff TMT Bulk Co., Ltd.'s Opposition to Defendants' Motion to Vacate the Attachment ("Pl. Mem."), at 5; Orozco Decl. at Ex. 2, ¶ 2.) Plaintiff alleges, and defendants do not contest, that defendants, as foreign corporations, have not obtained authorization to do business in New York from the New York Secretary of State and have no registered agent for the service of process in this state. (Pl. Mem. at 5; Transcript of Apr. 8, 2009 Rule E Hearing ("Hearing Tr."), at 3.) Defendants may not, therefore, be held to have expressly consented to personal jurisdiction in New York through such contacts. See Rockefeller Univ. v. Ligand Pharms., 581 F. Supp. 2d 464, 465 (S.D.N.Y. 2008) (describing registration requirements); N.Y. Bus. Corp. L. § 1301(a). Compare STX Panocean, at *4.

But foreign corporate defendants may also be "subject to jurisdiction, on a general or specific basis, depending on the contacts and actions of [their] agents." Ivan Visin Shipping Ltd. v. Onego Shipping & Chartering, B.V., 08 Civ. 1239 (JSR), 2008 WL 839714, at *2 (S.D.N.Y. Mar. 31, 2008), motion for reconsideration denied, 543 F. Supp. 2d 338 (S.D.N.Y. 2008). Under section 301 of the New York Civil Practice Law and Rules ("CPLR"), a foreign corporation may be considered present or "found" in New York, for general jurisdictional purposes, when it "does business" in New York by engaging in "continuous, permanent, and substantial activity" in the state. See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000), cert. denied, 532 U.S. 941 (2001). "The continuous presence and substantial activities that satisfy the requirement of doing business do not necessarily need to be conducted by the foreign corporation itself. . . . [A] court of New York may assert jurisdiction over a foreign corporation when

4

it affiliates itself with a New York representative entity and that . . . representative renders services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available." Id. To come within this rule, "a plaintiff need demonstrate neither a formal agency agreement, nor that the defendant exercised direct control over its putative agent. The agent must be primarily employed by the defendant and not engaged in similar services for other clients." Id. (citations omitted). Defendants assert that the activities of their agent, Oremco, satisfy these requirements. According to defendants, Oremco's work on their behalf is systematic, substantial and continuous such that defendants are present in this district for purposes of general jurisdiction.[1]

    B.    Service of Process

As noted, the parties agree that defendants cannot be found in this district for service of process. There is also no dispute that Oremco, with an office in Manhattan, may be found in this district. Plaintiff concedes that "[w]hen a company's managing or general agent is present in the district, it is immaterial that [the agent] is not expressly authorized by [defendant] to accept service of process on its behalf." (Pl. Mem. at 12, Hearing Tr. at 10-11.) The concession is well-grounded. See, e.g., Cantone & Co., Inc. v. Seafrigo, 07 Civ. 6602 (PKL), 2009 WL 210682, at *5 (S.D.N.Y. Jan. 27, 2009).

---

[1] A foreign corporate defendant may also be subject to specific jurisdiction in New York when it, or its agent, "'transacts . . . business within the state' and the cause of action asserted against it is one 'arising from' the transaction of such business." SK Shipping (Singapore) Pte Ltd. v. Petroexport Ltd., 08 Civ. 7758 (WHP), 2008 WL 4602540, at *3 (S.D.N.Y. Oct. 15, 2008) (citing CPLR § 302 and D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104-05 (2d Cir. 2006)). Defendants do not assert that plaintiff's claim for relief arises out of Oremco's transaction of business in New York. At the Court's Rule E hearing, counsel for defendants confirmed that defendants rely exclusively on a general agency theory of personal jurisdiction for purposes of their motion. (Hearing Tr. at 3-4.)

II.     Factual Background

The Restatement of Agency cautions that, when identifying general agency relationships, "the labels matter less than the underlying circumstances that warrant their application." Restatement (Third) of Agency § 2.01 cmt. d (2006). According to the Restatement, "[t]he prototypical general agent is a manager of a business, who has authority to conduct a series of transactions and who serves the principal on an ongoing as opposed to an episodic basis." Id. Defendants have come forward with evidence that:

- Oremco's business operations consist entirely of acting as agent for five related Tata entities in connection with their purchase of supplies from U.S.-based companies. (Declaration of Michael Grim, Vice President of Oremco (the "Grim Declaration"), ¶ 14.) Oremco's Coal Division serves Corus Staal and Corus UK, and its Procurement Division serves Tata Motors, Tata Steel, and Telco. (Id. ¶ 16.) Oremco maintains a permanent New York City staff and office location "for the sole purpose" of performing services to these clients. (Id. ¶ 17.)

- The only source of income to Oremco's Coal Division is its "commission" on Corus Staal and Corus UK coal purchases. The Coal Division has no other customers. (Id. ¶¶ 24-25.)

- Oremco provides the following services to Corus Staal and Corus UK:

    - development of contacts and business relationships with U.S. coal suppliers;
    - advice on the price, timing, quality and type of their coal purchases;
    - assistance in the negotiation of coal purchase contracts;
    - coordination of the inland transportation of coal from U.S. suppliers to various U.S. ports for shipment to Europe;
    - review and approval of coal supplier invoices;
    - preparation of all paperwork and documentation related to the purchase and export of defendants' coal. (Id. ¶ 21.)

- Oremco has provided such services for 38 years. (Id.)

6

- Corus Staal, Corus UK and Oremco are all indirectly owned by Tata Sons Limited. (Id. ¶¶ 7-11; id. at Ex. A.)

- Corus Staal owns Staalverwerking en Handel BV, which in turn owns 70% of Oremco. (Grim Decl. ¶¶ 7-8.) Together, Staalverwerking en Handel BV and Corus International (Overseas Holdings) Limited (the sister company to Corus UK) select and appoint Oremco's offices and directors. (Id. ¶¶ 9, 35.)

Defendants also note that, "[i]f any legal process for Corus UK, Corus Staal, Tata Motors, Tata Steel, or Telco were presented to or served on the offices of Oremco, Oremco would be obligated to immediately report such an event to the entity involved." (Id. ¶ 36.) Defendants have not identified the source of this self-proclaimed "obligation."[2]

Plaintiff concedes that, in certain circumstances, a defendant may be considered "found" within the district through its agent. (Pl. Mem. at 5.) Plaintiff maintains, however, that the limited scope of Oremco's work precludes a finding of general agent status in this case. "At best," plaintiff argues, "the activities allegedly performed by Oremco on behalf of the [d]efendants[] might give rise to <u>specific</u> jurisdiction for disputes arising under sales contracts, [but] these alleged services are not relevant for purposes of the present dispute under the charter party contract and certainly do not amount to Oremco's status as a general agent or a 'mere department' for general or specific jurisdiction." (Id. at 10.) (emphasis added; citation omitted).

---

[2] At the April 8 hearing, counsel for defendants conceded that Oremco has never received express authorization to accept service on behalf of either defendant. (Hearing Tr. at 2.) Counsel also argued correctly, however, that this fact would not impact Oremco's power to accept service, in any and all matters, for both defendants, if Oremco were found to be defendants' general agent—Oremco's general agent status would confer such authority as a matter of law. (Id. at 2-3.)

7

III.  Analysis

Defendants' written submissions confirm that Oremco has provided its services to defendants for thirty-eight years and that Oremco's Coal Division derives income exclusively through its commission on defendants' executed coal orders. (Grim Decl. ¶¶ 21, 24.) The question before the Court is whether Oremco's continuous and permanent activities on defendants' behalf are sufficiently substantial to support the exercise of general, personal jurisdiction over defendants in this district.

For the Court to conclude that Oremco is defendants' general agent, the evidence must show that Oremco "does all the business which [defendants] could do were [they] here by [their] own officials." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998) (quoting Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 537 (1967)). This "mean[s] that a foreign corporation is doing business in New York . . . when its New York representative provides services beyond 'mere solicitation' and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116, 121 (2d Cir. 1967), cert. denied, 390 U.S. 996 (1968).

In their Memorandum of Law in support of their motion, defendants cite two recent, Southern District decisions to demonstrate that they should be found "present" in this district, for general jurisdictional purposes, through Oremco. In Cantone & Co., Inc. v. Seafrigo, Judge Leisure granted a motion to vacate plaintiff's maritime attachment and dismiss the complaint where defendant demonstrated that it could be "found" in a convenient adjacent jurisdiction because a non-party member of its

corporate group maintained offices in Seacaucus, New Jersey. In concluding that defendant's non-party affiliate did qualify as a general agent for jurisdictional purposes, Judge Leisure emphasized that: (1) both defendant and its New Jersey affiliate were branch offices of the same corporate parent and listed themselves as such on the corporate parent's website; (2) the affiliate acted as a "handling agent" for defendant in the United States and performed management services on defendant's behalf with respect to plaintiff's cargo; (3) the affiliate routinely performed similar services on behalf of defendant on an ongoing basis; (4) plaintiff initially solicited business from the affiliate for movement of the cargo at issue, and (5) plaintiff was later advised that defendant's "U.S. office" (i.e. the non-party affiliate) would handle "all of the logistics" and correspondence concerning plaintiff's shipment. In <u>Ivan Visin Shipping</u>, Judge Rakoff granted a motion to vacate plaintiff's attachment where defendant established that it was found in the District of New Jersey through its agent, Onego Inc. Judge Rakoff noted that: (1) Onego Inc. was specifically established to give defendant a closer presence to its clients in the U.S. and Caribbean, (2) Onego Inc. chartered and operated vessels in the name of and on behalf of defendant, (3) Onego Inc. solicited business on behalf of defendant, booked and contracted for the shipment of cargo, and attended to customs services on defendant's behalf, (4) defendant's website confirmed the existence of an agency relationship with Onego Inc., and (5) a form contract between defendant and Onego Inc. specified that Onego Inc. would act as defendant's agent in undertaking a variety of services related to insurance, freight management, accounting, chartering, bunkering and operation.

Defendants also rely on Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533 (1967), to argue that this Court's jurisdictional analysis should focus on the "essential" nature of Oremco's services in New York and not the scale or relative centrality of those services to defendants' overall business operation. (Hearing Tr. at 4-5.) In Frummer, the New York Court of Appeals affirmed the exercise of personal jurisdiction over a foreign corporation, Hilton Hotels (U.K.) Ltd., where the record indicated that Hilton (U.K.) had been "doing business" in New York, for purposes of section 301 of the CPLR, through its New York-based Hilton Reservation Service. 19 N.Y.2d at 536-38. The Frummer decision emphasized that, unlike agencies whose work for their foreign principal "amounted to little more than rendering telephone service and mailing brochures," and unlike public relations representatives who did not complete actual bookings or ticket sales, the Hilton Reservation Service both accepted and confirmed room reservations for the London Hilton. Id. at 537-38. "In short," the Court explained, "—and this is the significant and pivotal factor—the [Hilton Reservation] Service [did] all the business which Hilton (U.K.) could do were it here by its own officials." Id. at 537.

The record in this case does not demonstrate comparable business activity on defendants' behalf in New York. According to the Grim Declaration, one part of Oremco's New York operation (1) develops contacts with U.S. coal suppliers, (2) advises defendants on their coal purchases, (3) assists in the negotiation of coal purchase contracts, (4) coordinates—with defendants and their suppliers—the inland transportation of purchased coal, and (5) handles any and all paperwork associated with defendants' purchases, including the review and approval (but not actual payment) of supplier

invoices. See Grim Decl. ¶ 21. The total Oremco staff responsible for this work consists of one full time employee, one part-time employee, and one consultant. (Id. ¶ 20.) Unlike in Cantone or Ivan Visin Shipping, neither Oremco nor the defendants advertise Oremco as a general agent on their public websites. (Hearing Tr. at 9.) There is no evidence that Oremco would be authorized to execute coal purchase contracts on its own or to perform management services of any kind on defendants' behalf. The Declaration of TMT Bulk Co., Ltd. Manager Hsu-Fong (Tony) Shih also confirms that Corus UK, not Oremco, acted as Corus Staal's agent during the preparation of the charter contract at issue in this case: plaintiff negotiated the contract directly with Corus UK and has never dealt with Oremco in this or any other transaction. (Shih Decl. ¶¶ 6-8.)

        Defendants emphasize the general importance of a global coal supply network to their business. See Declaration of Corus UK Director, Frank Royle, at ¶ 3 ("Corus UK requires the use of large quantities of coal in order to perform its steel manufacturing operations, and Corus UK could not conduct its business without this coal. Moreover, it is essential to Corus UK from a business standpoint that it maintain multiple suppliers of coal in different markets in order to ensure the continued supply of coal on an as needed basis and at reasonable prices. . . . Accordingly, it is essential that Corus UK maintain its business relationships and supply of coal from suppliers located in the United States. If Oremco were not available to perform the services it provides for Corus UK as described in the Grim Declaration, Corus UK would be required to perform these services itself."); Declaration of Corus Staal Director, Co van Dort, at ¶ 3 (same); Hearing Tr. at 5, 7. But there is no evidence establishing the manner or method in which Oremco's work protects this most basic business need. Without more, the conclusory

characterization of Oremco as "essential" cannot separate Oremco's work from the type of general solicitation services that are insufficient to support general jurisdiction over an absent principal in New York. The basic necessity of coal to a steel manufacturer does not render the work of a three-person advisory staff "substantial" for purposes of this Court's jurisdictional analysis. The Court concludes that Oremco does not qualify as a general agent for Corus UK or Corus Staal and that Oremco's presence in New York does not provide a basis to vacate plaintiff's attachment of assets under Rule B. Plaintiff has satisfied its burden of proof that defendants are not found in the district.

IV.   Motion to Dismiss

In their submission to the Court, defendants also move to dismiss plaintiff's Verified Complaint. Defendants do not offer any basis for dismissal other than their claim that they are found in the district. Because the Court concludes that plaintiff's attachment under Rule B is proper, defendants' motion to dismiss must be denied.

V.   Conclusion

For the foregoing reasons, defendants' motion to vacate the writ of attachment, release the attached funds, and dismiss the Verified Complaint is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
April 23, 2009